UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES SCOTT, | ) | CASE NO. 5:18-cv-2535 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GREAT LAKES CHEESE CO., INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion for summary judgment filed by defendant Great Lakes Cheese Company, Inc. ("GLC"). (Doc. No. 26 ("MSJ").) Plaintiff James Scott ("Scott") filed a brief in opposition (Doc. No. 30 ("Opp'n")[1]), and GLC filed a reply (Doc. No. 31 ("Reply")).[2] For the reasons set forth herein, GLC's motion is granted.

I. **BACKGROUND**

GLC is a national packager and manufacturer of private label cheese products. (Doc. No. 26-1, Declaration of Becky Oliver[3] ("Oliver Decl.") ¶ 1.) GLC operates a facility in Hiram, Ohio, where it runs three shifts and employs about 500 people. (*Id.* ¶ 3.)

---

[1] This brief, timely filed on July 25, 2019, is combined with plaintiff's own motion for summary judgment, which is denied as untimely, since the deadline for all dispositive motions was June 26, 2019. Plaintiff sought no leave to file his motion late. Further, as the Sixth Circuit has noted, Rule 56 "does not permit a party to move for summary judgment in a responsive pleading." *Ordos City Hawtai Autobody Co. v. Dimond Rigging Co.*, 695 F. App'x 864, 870 (6th Cir. 2017).

[2] Plaintiff also filed a document styled as a "response" to defendant's motion for summary judgment and to defendant's reply. (Doc. No. 32.) This document is really a sur-reply, which was filed without leave. Defendant moved to strike the document. (Doc. No. 33.) Plaintiff filed a "reply" to the motion to strike. (Doc. No. 34.) The motion to strike (Doc. No. 33) is granted.

[3] Becky Oliver ("Oliver"), f/k/a Becky Gough, began working for GLC in September 2014 and currently serves as the Human Resources Manager. (Oliver Decl. ¶ 1.) At all relevant times, she was responsible for handling attendance, including leave under the Family and Medical Leave Act ("FMLA"). (*Id.* ¶ 2.)

Scott was employed by GLC at its Hiram facility as a bulk cheese handler from December 31, 2006 until July 13, 2016. When he was hired by GLC, Scott received a copy of the employee handbook and subsequently acknowledged receiving periodic updates, as late as February 18, 2016. (*Id.* ¶¶ 4–5; Exs. A & B.)

Section 1.1 of the employee handbook states that "[a]ll employees at [GLC] are employed at-will, which means their employment is subject to termination at any time, with or without notice and with or without cause, by either the employee or GLC." (*Id.* Ex. A at 146.[4]) The handbook further states that "[n]o promises, exceptions, terms or conditions of employment contrary [to the at-will designation] will be effective or can be relied upon." (*Id.*) "No one but the CEO can modify an employee's at-will status . . . [and such modification] must be in writing to be effective." (*Id.*)

The employee handbook also notes that "GLC relies on a no-fault attendance policy to ensure all employees are at work on time and available for all scheduled shifts." (*Id.* at 156.) "The **only** exception to the attendance policy are hours missed for an approved leave, Family and Medical Leave Act (FMLA) eligible leave or pre-approved PPT [paid personal time]." (*Id.*)

The GLC attendance policy operates on a progressive point accumulation basis, as follows:

1. If an employee's cumulative occurrence point totals do not reach five (5), each occurrence point will clear one (1) year after the date of the incident.

2. Any employee reaching a total of five (5) or more attendance points in a rolling 12-month calendar year will receive a written warning and their points will be "frozen".

3. If an employee completes a 12-month period of active employment without reaching a cumulative total of ten (10) points after a written warning, the discipline action will be cleared from their record and any occurrence points from the previous 12 months will no longer be considered in the cumulative point totals.

---

[4] All page number references are to the page identification number generated by the Court's electronic docketing system.

4. Any employee reaching eight (8) total occurrence points, will receive a final warning for attendance violations reminding them of the ten (10) occurrence point threshold.

5. If an employee reaches ten (10) total occurrence points, they will be terminated for violation of the attendance policy.

(*Id*. at 158 § 4.3(C).) Point scales for various occurrences were defined in the employee handbook. (*Id*. at 156–57 § 4.2.) At some point during Scott's employment, accumulating nine (9) points led to a three-day suspension. He admits, however, that he was never suspended from work under that policy, even though he accumulated nine (9) points. (Doc. No. 28-1, Deposition of James Scott ("Scott Dep.") at 329 (20–21)[5].)[6]

Scott's employment was terminated on July 13, 2016, after he accumulated ten (10) points under the attendance policy. (Oliver Decl. ¶ 6.) Prior to his termination, Scott was given the required warnings under the employee handbook. (Scott Dep. at 329 (20–21).)

On November 1, 2018, Scott filed his complaint against GLC. (Doc. No. 1 ("Compl.").) The complaint alleges one count of age discrimination under the Age Discrimination in Employment Act ("ADEA"), one count of retaliation under the Family and Medical Leave Act ("FMLA"), and one count of breach of contract/promissory estoppel.

GLC now moves for summary judgment on each of the three counts of the complaint.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is

---

[5] Because the deposition transcripts are in the form of four (4) pages to each Page ID#, the Court will cite the Page ID# followed by the actual deposition page number(s) in parentheses.

[6] Suspension after nine (9) points is apparently no longer part of the policy. (Scott Dep. at 340 (62–63).)

material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" in which case summary judgment is not appropriate. *Id*. Under this standard, however, the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion. *Dunigan v. Noble*, 390 F.3d 486, 491–92 (6th Cir. 2004) (quotation marks omitted) (citing *Anderson*, 477 U.S. at 247–48).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co*., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cty. Bd. of Educ*., 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (finding that summary judgment is appropriate whenever the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ*., 351 F.3d 240, 247 (6th Cir. 2003).

Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); s*ee also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988))).

## III. DISCUSSION

### A. Age Discrimination (Count I)

In Count I of the complaint, Scott alleges, *inter alia*, that GLC "committed violations of ADEA by using his age [as] a determinative factor in its decision to discharge him." (Compl. ¶ 21.)

Under the familiar *McDonnell Douglas*[7] burden-shifting analysis, used where, as here, there is no direct evidence of discrimination, a plaintiff must first establish all the elements of a *prima facie* case. If he does so, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for the adverse employment action. Thereafter, the burden shifts back to the plaintiff to show that the reason offered by the defendant is a pretext for discrimination. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

To establish a *prima facie* case of age discrimination, Scott must show that (1) he was a member of the protected class, that is, over forty (40) years of age; (2) he was discharged; (3) he was qualified for his position; and, (4) he was replaced by a younger person. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008).

At his deposition, Scott testified as follows:

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

> Q. You allege in paragraph 20 of the complaint that Great Lakes Cheese discharged you and hired younger candidates to fulfill your job duties, correct?[8]
>
> A. They always do that.
>
> Q. We're talking about for your position.
>
> A. I don't know for sure, no.
>
> \* \* \*
>
> Q. Can you identify anyone who was hired to fulfill your job duties?
>
> A. No.
>
> Q. So you can't identify anyone who was younger than you, or older than you, that was hired to fulfill your job duties, correct?
>
> A. Correct. I wasn't there.
>
> \* \* \*
>
> Q. Interrogatory 11 asks you to identify the younger candidates that were hired by Great Lakes Cheese to fulfill your job duties as you alleged in the complaint. As you sit here today, you are not able to identify anyone, correct?
>
> A. Correct.

(Scott Dep. at 333 (35); 340 (65) (footnote added).)

Because Scott cannot identify a younger person that replaced him, he cannot establish a *prima facie* case of age discrimination, and thus GLC argues that it is entitled to summary judgment on this count of the complaint. Scott makes no argument to the contrary and, in fact, completely fails to address GLC's arguments in his opposition brief.[9]

---

[8] Scott also testified at his deposition that he reviewed the allegations of the complaint before it was filed. (Scott Dep. at 326 (9).)

[9] In his opposition brief, Scott states that he "shall limit both his Response in Opposition and his Motion for Summary [J]udgment to the FMLA issues in the case." (Opp'n at 399.) He was free to utilize that strategy, but "[f]ailure by a plaintiff to respond to a motion for summary judgment constitutes a forfeiture of the claims to which the motion is

Moreover, aside from his failure to establish a *prima facie* case, Scott testified as follows at this deposition:

> Q. So just so I understand, you contend that one of the reasons that you were terminated was because Great Lakes Cheese considered your age in making the decision to terminate you, correct?
>
> A. No.
>
> Q. You don't believe they considered your age?
>
> A. No, I don't believe, no.

(*Id*. at 345 (85).)

The Court agrees that Scott's age discrimination claim fails and GLC is entitled to summary judgment on Count I.

### B. Breach of Contract—Promissory Estoppel (Count III)

In Count III of the complaint, Scott alleges that GLC is liable for breach of contract on a promissory estoppel theory because it allegedly promised to correct an error in its calculation of his attendance record but failed to do so, using the allegedly incorrect record as grounds for his termination.

Scott was an at-will employee, a fact that is clearly expressed in GLC's employee handbook. Scott specifically acknowledged this on several occasions, most notably on February 18, 2016, just months before his termination. (Oliver Decl. Ex. A at 146; Ex. B at 205.)

Ohio law requires "specific evidence to show that the parties mutually assented to something other than at-will employment." *Reasoner v. Bill Woeste Chevrolet, Inc.*, 730 N.E.2d 992, 995 (Ohio Ct. App. 1999). Scott does not claim that he had a separate written agreement with

---

addressed." *Rogers v. Mich. Dep't of Corr.*, No. 1:17-CV-383, 2019 WL 1388677, at *1 (W.D. Mich. Mar. 6, 2019) (citing *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013)).

GLC; rather, he relies on a theory of promissory estoppel. For that theory to apply, Scott must prove (1) there was a "clear, unambiguous promise" by GLC; (2) that Scott "reasonably rel[ied] on that promise[;]" (3) that "the employer should have reasonably expected" his reliance; and, (4) that he relied on the promise to his detriment. *Id*. at 996.

Since Scott can meet none of these four requirements, GLC moves for summary judgment. Scott has made no counter argument in his opposition brief and, therefore, has forfeited this claim. (*See* n.9, *supra*.)

GLC is entitled to summary judgment on Count III of the complaint.

### C. Family and Medical Leave Act—Retaliation

The Sixth Circuit "recognizes 'two discrete theories of recovery under the FMLA: (1) the so-called "interference" or "entitlement" theory arising from [29 U.S.C.] § 2615(a)(1), and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2).'" *Dyer v. Ventra Sandusky, LLC*, -- F.3d --, No. 18-3802, 2019 WL 3729494, at *2 (6th Cir. Aug. 8, 2019) (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012)).

Scott styles Count II of his complaint as a retaliation claim under the FMLA, alleging in relevant part[10] as follows:

29. Plaintiff took an FMLA-qualifying leave to attend to his ill wife, but [d]efendant earmarked a portion of that leave in error and deemed it absenteeism against [p]laintiff.

30. Though the [d]efendant realized its FMLA calculation error, and even promised [p]laintiff to correct it, [d]efendant nonetheless used the erroneous

---

[10] Scott alleges, and it is undisputed, that he is an eligible employee under FMLA; he requested FMLA leave; he had been employed by GLC for at least 12 months and had at least 1,250 hours of service; GLC engaged in an industry affecting commerce and had fifty (50) or more employees for each working day during each of the twenty (20) or more calendar workweeks in the current or preceding calendar year; and Scott was entitled to a total of twelve (12) weeks of FMLA leave on either an intermittent or block basis. (Compl. ¶¶ 24–28.)

> FMLA calculation to assess absenteeism against [p]laintiff after the death of his wife—and further used it as a basis to discharge him.
>
> 31. Plaintiff believes that his FMLA leave to attend to his wife was a motivating factor in [d]efendant's decision to discharge him, versus other individuals.

(Compl. ¶¶ 29–31.)

To establish a *prima facie* case of FMLA retaliation, Scott must prove (1) that he availed himself of a protected FMLA right; (2) that he suffered an adverse employment action; and, (3) that there was a causal connection between the exercise of his rights and the adverse employment action. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314–16 (6th Cir. 2001); *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).

Scott cannot establish the third element. At his deposition, he testified as follows:

> Q. Paragraph 31 [of the complaint] says that you believe that your FMLA leave to attend to your wife was a motivating factor in Great Lakes Cheese's decision to discharge you versus other individuals. What is the basis of this belief?[11]
>
> A. I don't believe that, no.
>
> Q. You don't?
>
> A. I never did believe that.
>
> Q. You don't think they considered your FMLA leave to terminate you?
>
> A. No, because I went back to work after my wife passed. . . .
>
> Q. Your allegation in this [ ] lawsuit is you took time off to care for your wife?
>
> A. Right.
>
> Q. Which was protected by FMLA leave?
>
> A. Yes.

---

[11] *See* n.8, *supra*.

> Q. Because you took that time off, Great Lakes Cheese decided to terminate you. Do you believe that is the case?
>
> A. No.
>
> * * *
>
> Q. You don't believe that Great Lakes Cheese terminated you because you took FMLA leave to care for your wife, correct?
>
> A. Correct.

(Scott Dep. at 335–36 (45–46), 345 (85) (footnote added).)

At his deposition, Scott attempted to clarify this count of the complaint by testifying that it is his position that GLC did not properly calculate his attendance points with respect to the leave he took following his wife's death. Under GLC's employee handbook, Scott was entitled to bereavement leave of three (3) consecutive days with pay. (Oliver Decl. Ex. A at 163.) Scott claims that his supervisors told him to take as much time as he needed, and he advised that he would "take off the rest of the week." (Scott Dep. at 335 (45).) Therefore, Scott claims he took the three (3) days of bereavement leave permitted by the employee handbook, plus four (4) additional days. (*Id.*) He claims he was improperly assessed "three points for that[]" on his attendance record. (*Id.*) But, when asked whether that bereavement leave should have been considered FMLA leave, he answered in the negative.[12] (*Id.*) Therefore, even if Scott is correct that there was an error in his

---

[12] *See Gray v. Clarksville Health Sys., G.P.*, No. 3:13-00863, 2015 WL 136137, at *3 (M.D. Tenn. Jan. 9, 2015) (citing cases holding that bereavement leave or absence from work following the death of a family member is not protected under the FMLA because it is not a serious health condition); *Hoban v. WBNCC Joint Venture*, No. 06-13142, 2007 WL 1101217, at *5 (E.D. Mich. Apr. 5, 2007) (same).

attendance record related to his bereavement leave, which the Court need not decide,[13] it was not, by Scott's own admission, the result of an FMLA violation or retaliation.[14]

GLC is entitled to summary judgment on Count II of the complaint.

## III. CONCLUSION

For the reasons set forth herein, defendant's motion for summary judgment (Doc. No. 26) is granted and this case is dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: September 6, 2019

HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE

---

[13] Scott's wife died on August 16, 2015. His attendance record does not reflect any points against him during August of 2015. Rather, he "received 3 days of bereavement leave pursuant to Company policy and 2 additional days of personal time." (Oliver Decl. ¶¶ 15–16; *see also* Pl. Ex. 5 (Doc. No. 27-1 at 308) (showing no absences between May and September of 2015 counting toward his first five (5) occurrence points that resulted in a verbal warning).)

[14] In his opposition brief, Scott claims that Count II alleges an FMLA interference claim with respect to FMLA leave he requested for his own serious medical conditions (as opposed to the FMLA leave he was granted to care for his dying wife). There are *no* such allegations in the complaint and "[a] party may not rely on wholly new allegations of wrongdoing to resist a motion for summary judgment." *Guiffre v. Local Lodge No. 1124, United Steelworkers of Am.*, 940 F.2d 660 (Table), 1991 WL 135576, at *5 (6th Cir. July 24, 1991). Further, even after GLC quite clearly (and correctly) pointed out that the only FMLA claim in the complaint was one for retaliation based on Scott's exercise of his right to take FMLA leave to assist his wife, Scott never sought leave to amend his complaint. This Court "does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Sinay v. Lamson & Sessions, Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991); *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008) ("The argument that the district court should have rescued [p]laintiffs by *sua sponte* offering leave to amend the complaint is simply misplaced."). Therefore, the Court need not address any FMLA interference claim. Moreover, although not argued by GLC, the Court observes that any FMLA interference claim that *might* have been raised on Scott's own behalf (either originally or by amendment) would be barred by FMLA's two-year statute of limitations. Scott recognizes this because he argues in his opposition brief that GLC acted willfully and, therefore, a three-year period applies. (Opp'n at 408.) But, once again, there are no allegations of willfulness in the complaint.